IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK KING,                                    No. 1:13-cv-01998-HZ

                    Plaintiff,                OPINION & ORDER

        v.

CAROLYN COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

Juliana E. Coons
COONS & COONS
440 E. Broadway, Suite 140
Eugene, OR 97401

        Attorney for Plaintiff

S. Amanda Marshall
United States Attorney, District of Oregon
Ronald K. Silver
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Kathryn A. Miller
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Mark King brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the reasons that follow, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

       Plaintiff applied for DIB on July 10, 2009, alleging an onset date of December 19, 2007. Tr. 11. His application was denied initially and on reconsideration. Tr. 80-89. On January 12, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 33-77. On April 17, 2012, the ALJ found Plaintiff not disabled. Tr. 11-26. The Appeals Council denied review. Tr. 1-5.

## FACTUAL BACKGROUND

       Plaintiff alleges disability based on post-traumatic stress disorder, anxiety, depression, paranoia, and herniated disks in his back. Tr. 143. Plaintiff also testified that he has problems with his knees and a torn rotator cuff in his right shoulder. Tr. 44. Plaintiff was forty-four years old at the time of the administrative hearing. Tr. 24. He has a GED. Tr. 46. He has past work experience as a semi-truck driver and a security guard. Tr. 24, 155.

       Plaintiff's mental impairments stem from a 2006 altercation between Plaintiff and a former coworker. Tr. 144. The coworker, another truck driver, punched Plaintiff in the face

during a dispute over a parking space. Tr. 491-95. As a result, Plaintiff is anxious and paranoid.

Tr. 44, 144. Plaintiff is afraid of being attacked again and he avoids being around strangers. Tr.

64-65.

Because the parties are familiar with the medical and other evidence in the record, the

Court refers to any additional relevant facts in the discussion section below.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving

disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not,

the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d),

416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of chronic lumbar spine pain of unknown etiology because of near normal clinical signs, an adjustment and/or dysthymic disorder, post-traumatic stress disorder, generalized anxiety-related disorder, and personality disorder with paranoid features as diagnosed by evaluating psychologists. Tr. 13. In addition, the ALJ determined that Plaintiff is obese. Id. The ALJ found that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 15. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform less than sedentary work, as defined in 20 C.F.R. § 404.1567(a). Tr. 16. Plaintiff is able to lift/carry less than ten pounds frequently and ten pounds occasionally; able to sit for about six hours during a normal eight-hour workday, with normal breaks; able to stand/walk for about two hours during a normal eight-hour workday, with normal breaks; able to perform push/pull activities without limit except as shown for lift/carry; and able to perform postural activities on a frequent basis. Tr. 17. The ALJ limited Plaintiff to unskilled

4 - OPINION & ORDER

work, with an SVP of one or two, which requires only simple work-related decision-making and should be performed in a setting that involves few, if any, workplace changes. Id. The ALJ also stated that such work should require no more than occasional interaction with supervisors and co-workers, and no contact with the general public. Id.

With this residual functional capacity, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. Tr. 24. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy, such as table worker, toy stuffer, and bench hand. Tr. 25. Thus, the ALJ determined that Plaintiff is not disabled. Id.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1009-10 (9th Cir. 2014); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "[W]e must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (citations and quotation marks omitted). "The ALJ

is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]." Id. (citation omitted). The Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to properly evaluate the medical opinion evidence; (2) failing to provide clear and convincing reasons for rejecting Plaintiff's testimony; and (3) failing to provide the Vocational Expert (VE) with a complete hypothetical that encompassed the combined effects of Plaintiff's severe impairments.

## I.    Medical opinion evidence

Plaintiff argues that the ALJ's evaluation of the medical evidence was incorrect and not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ did not provide legitimate reasons for rejecting treating psychiatrist Dr. Chodakiewitz's opinion and that the ALJ incorrectly evaluated the opinions of the other medical providers in the record.

"In disability benefits cases ... physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." Garrison, 759 F.3d at 1012 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). "In conjunction with the relevant regulations, [the Ninth Circuit has] ... developed standards that guide [its] analysis of an ALJ's weighing of medical evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, the Court distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. See Ryan, 528 F.3d at 1198. "The weight afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" Id. (quoting § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight ... even if it does not meet the test for controlling weight." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. (citation omitted). Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. Garrison, 759 F.3d at 1012; see also Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996).

The ALJ gave "little weight" to the opinion of treating psychiatrist Dr. Chodakiewitz. Tr. 22. In particular, he rejected Dr. Chodakiewitz's opinion that Plaintiff was mentally disabled. Tr. 17. The ALJ found that Dr. Chodakiewitz did not provide psychiatric history or psychological findings to support her opinion and that, therefore, her opinion was based primarily on unverified allegations by Plaintiff. Tr. 16.

One reason the ALJ discounted Dr. Chodakiewitz's opinion was that her conclusions were internally inconsistent with her own treatment notes. Tr. 21. A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating provider. Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014). The ALJ provided many examples of how Dr. Chodakiewitz's treatments notes and evaluations showed that there was "little wrong psychiatrically," Tr. 19, even though Dr. Chodakiewitz opined that Plaintiff was mentally disabled. Dr. Chodakiewitz's notes reflected that Plaintiff had a normal affect, appropriate speech and thought content, no evidence of perceptual disturbances, and good judgment, insight, and reliability. Tr. 601-87. While Plaintiff reported being irritated, anxious, and paranoid, Dr. Chodakiewitz also found that he was alert, oriented, and cooperative. See, e.g., Tr. 606.

The ALJ also discounted Dr. Chodakiewitz's opinion that Plaintiff was mentally disabled because the opinion conflicted with those of treating psychologist Dr. Darrinton and evaluating psychologists Dr. Ayvazian and Dr. Moore. Tr. 18-19. Plaintiff argues that the other psychologists' reports are, "in fact, fairly consistent in their evaluations that concluded that [Plaintiff] suffered from significant psychiatric impairment." Pl.'s Br. 8. However, the ALJ provided specific, detailed examples of how each doctor questioned Plaintiff's credibility. For example, in September 2007, Dr. Ayvazian found inconsistencies in Plaintiff's responses to

personality testing and "the possibility of a mild exaggeration of complaints and problems" in Plaintiff's responses regarding negative impression management. Tr. 451. Dr. Ayvazian stated that by Plaintiff's "own self-report and demonstrated functional capacity during this re-evaluation, he is not suffering from severe impairment. It must therefore follow that the pronounced levels of distress he endorsed on the PAI are at least somewhat exaggerated." Tr. 461. In addition, Dr. Moore agreed that there was a "marked discrepancy" between Plaintiff's claimed stress and the test results from his examinations with Dr. Ayvazian. Tr. 18. Both Dr. Moore and Dr. Ayvazian "agreed it made little clinical sense that [Plaintiff's] psychological condition would be deteriorating since he stopped work, as alleged, rather than improving. They explained that this was at odds with his report that his mental disturbances and distresses were primarily work-related." Tr. 19. Dr. Darrinton stated that Plaintiff had made minimal effort to comply with treatment recommendations and had little follow through on behavior restructuring, such as anger management. See Tr. 483 (noting that "little follow through occurs").

Furthermore, the ALJ noted that even Dr. Chodakiewitz questioned the validity of Plaintiff's mental complaints. Tr. 17. Plaintiff disagrees with the ALJ's characterization of Dr. Chodakiewitz's initial evaluation of Plaintiff in February 2007. Plaintiff claims that the ALJ "improperly conflated Dr. Chodakiewitz's questioning the source of Plaintiff's depression with questioning the veracity of the condition in the first instance." Pl.'s Br. 8. The passage of Dr. Chodakiewitz's opinion that is at issue is as follows:

> It is my opinion that the patient is presenting a mental disorder and, based on the information provided by the patient and the medical records reviewed, it seems at this time, that his mental disorder is work-related and the physical injury is the cause of his mental disorder. However, the patient was being treated for depression at least six months prior to the incident in question, which the patient attributed to the pain that resulted from a work-related back injury he sustained 12-years-ago while working for another employer. If the pain is indeed the cause of his depression, I would have expected him to be treated for depression a lot sooner after the accident in question, and not 12-years

> later. I'm inclined to think that there may be other non-industrial issues causing depression that I am not aware as yet [sic]. The patient stated that one of his hobbies is riding motorcycles, which he is still doing. In my opinion, someone with a back injury of 12 years and chronic pain that causes depression should not be taking chances to get involved in an accident while riding a motorcycle.

Tr. 691. The ALJ's characterization of Dr. Chodakiewitz's report was not improper—the report clearly questions the validity of Plaintiff's complaints of depression caused by a 12 year-old work-related back injury.

Finally, Plaintiff contends that the ALJ made a "serious error" by stating that only Dr. Chodakiewitz has treated Plaintiff for an extended period of time, when in fact Dr. Darrinton had multiple treatment contacts with Plaintiff, Dr. Moore evaluated Plaintiff on two separate occasions, and Dr. Ayvazian evaluated Plaintiff on three occasions. The Court fails to see how this is a "serious error." The other doctors' contacts with Plaintiff were far less frequent than those with Dr. Chodakiewitz, who treated Plaintiff since 2007. Furthermore, Plaintiff fails to explain how this "error" had any impact on the ALJ's conclusions.

In sum, the ALJ set out a detailed and thorough summary of the facts and conflicting medical evidence. The ALJ set forth his own interpretations and explained why they were correct. The ALJ combed through the record and found numerous examples from the reports and treatment notes of Plaintiff's treating and examining psychologists that suggested Plaintiff was malingering. Tr. 15-22. Because Dr. Chodakiewitz's opinion was largely based on Plaintiff's self-reports, the ALJ properly discounted Dr. Chodakiewitz's opinion. See Ghanim, 763 F. 3d 1154.

The Ninth Circuit has explained that even if the record may be "susceptible to more than one rational interpretation," if the ALJ's decision is supported by substantial evidence it must be upheld. See Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); see also Treichler v.

Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("we cannot substitute our conclusions for the ALJ's"). In this case, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Chodakiewitz's opinion and adopting the opinions of Drs. Moore, Ayvazian, and Darrinton, as to Plaintiff's credibility and the severity of his impairments.[1]

## II.    Plaintiff's Credibility

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing."

---

[1] Plaintiff advances a separate argument that the ALJ erred in finding that Plaintiff's conditions do not medically equal the severity of a listed impairment. However, Plaintiff's argument hinges upon the acceptance of Dr. Chodakiewitz's opinion. Because the ALJ properly discounted Dr. Chodakiewitz's opinion, Plaintiff's argument fails.

Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Morgan, 169 F.3d at 599.

Here, the ALJ found that the Plaintiff's credibility was undermined by the lack of evidence and credible medical and psychological opinions, as discussed above, and also by Plaintiff's inconsistent statements. Tr. 22. Plaintiff had no history of psychiatric hospitalizations, mental health therapy, or psychotropics. Tr. 23. The ALJ found it inconsistent that Plaintiff alleged having back pain from a work injury in 2000, yet he worked from 1994 to 2006 as a truck driver at the medium exertional level. Id. Furthermore, the ALJ found that the medical evidence demonstrated that Plaintiff complained of cervical spine and right shoulder pain, not lumbar pain. Id.

In addition, the ALJ found that Plaintiff had daily activities that were inconsistent with an allegation of disability. Id. He balanced a checkbook, went shopping with his wife, used a computer, flew alone to New York to see his mother, could count change, prepared simple meals, drove and walked outside, and followed instructions. Id. Plaintiff and his wife lived with their three children, the boyfriend of one of their daughters, and a foreign exchange student. Tr. 23. Because Plaintiff's wife was the sole breadwinner for the family and therefore was not home as much as Plaintiff, the ALJ found that Plaintiff must have been able to provide appropriate care for the children living in his house. Id.

As an initial matter, the parties disagree about which standard of review this Court should apply in assessing the ALJ's credibility finding. While the Court agrees with Plaintiff that the "clear and convincing" standard applies if there is no evidence of malingering, here the ALJ

provided substantial evidence of malingering as discussed above. Nevertheless, even under the "clear and convincing standard," Plaintiff's arguments fail.

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. Plaintiff asserts in a conclusory statement that the ALJ's decision is inconsistent with the medical evidence of record. The Court disagrees. Plaintiff pulls out individual statements from the ALJ's opinion and attempts to refute each one to demonstrate that the ALJ's decision is inconsistent with the medical evidence. For example, Plaintiff states that "[t]he ALJ thought it meant something that Plaintiff did not experience hallucinations, yet hallucinations are not a required element of the Listings for personality disorders or anxiety." Pl.'s Br. 17 (referencing Tr. 21). However, while the ALJ noted that Plaintiff always denied hallucinations and suicidal or homicidal ideation, the ALJ did not rely only on this piece of medical evidence in order to conclude that Plaintiff was not credible. Tr. 21. Rather, the ALJ found that, taking the medical evidence as a whole, Plaintiff's testimony regarding his alleged mental impairment was not credible.

Plaintiff also argues that the ALJ should have factored Plaintiff's earnings into his credibility determination. Pl. Br. 19. Plaintiff cites no support for the proposition that his prior salary would be indicative of his credibility as to his alleged disability. The ALJ did, however, consider Plaintiff's work history in noting that Plaintiff did not have a serious impairment in occupational functioning given that only one employer had fired him in over 24 years of employment. Tr. 22.

Finally, Plaintiff argues that the ALJ was biased against Plaintiff because he was unnecessarily sarcastic. "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Rollins v. Massanari, 261 F.3d 853, 857-58

(9th Cir. 2001) (citation omitted). However, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display" do not establish bias. Id. (quoting Liteky v. United States, 510 U.S. 540, 555–56 (1994)). The ALJ in this case, like the one in Rollins, "occasionally exhibited sarcasm or impatience." See Rollins, 261 F.3d at 857. However, Plaintiff must show more in order to demonstrate bias. Plaintiff points to nothing in the record that was "so extreme as to display clear inability to render fair judgment." Id. (citation omitted). Therefore, Plaintiff's argument regarding bias is without merit.

## III.    Vocational Expert hypothetical

Plaintiff argues that the ALJ relied on a hypothetical question provided to the Vocational Expert (VE) which eliminated the limiting effects of Plaintiff's combined impairments. First, Plaintiff contends that the ALJ's depiction of Plaintiff's disability was not accurate because the ALJ rejected Plaintiff's testimony as well as the opinion of Dr. Chodakiewitz. Because the Court already found that the ALJ's credibility determination and evaluation of medical opinion evidence was supported by substantial evidence, Plaintiff's argument here fails. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (Plaintiff's argument that the ALJ's RFC finding did not account for all her limitations failed because Plaintiff "simply restate[d] her argument that . . . the ALJ improperly discounted her testimony and the testimony of medical experts.").

Next, Plaintiff argues that the ALJ erred at step five because he relied on a hypothetical to the VE that did not include a limitation that selective employment placement would be required, as well as a relationship prior to employment between the supervisor and the worker. However, these limitations are not in the ALJ's RFC. Because the RFC reflects the ALJ's

determination of Plaintiff's limitations, the ALJ was not required to add other limitations when

posing the hypothetical to the VE. Rather, the ALJ's hypothetical accurately reflects what he

determined Plaintiff was capable of doing in a workplace. Therefore, the ALJ did not err at step

five.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015



MARCO A. HERNÁNDEZ
United States District Judge